PHILLIPPE ET AL. *v.* AXE ET AL.

[No. 27,576. Filed January 5, 1942.]

*Kessinger, Hill & Arterburn,* of Vincennes, and *Barnes, Hickam, Pantzer & Boyd,* of Indianapolis, for appellants.

*Joseph W. Kimmel* and *Curtis V. Kimmel,* both of Vincennes, and *Arthur L. Gilliom* and *Elbert R. Gilliom,* both of Indianapolis, for appellees.

FANSLER, J.—This is an appeal from an interlocutory order granting a temporary injunction at the suit of the appellee Axe.

Error is assigned upon the granting of the injunction.

The appellee Axe has been a tenure teacher and superintendent of schools in the City of Bicknell. On April 2, 1941, the school board adopted and spread upon its record a resolution fixing a date for the consideration and determination of whether or not the indefinite contract of the appellee Axe with the school corporation should be terminated and canceled.

The rights of tenure teachers are fixed by statute. Section 28-4308, Burns' 1933, § 6004, Baldwin's 1934, provides the manner in which such contracts can be canceled by the school board. It is provided that not less than thirty days nor more than forty days before the consideration of the cancellation of such a contract the teacher shall be notified in writing of the time and place of the consideration of such cancellation; that if the teacher requests a written statement of the reasons for such consideration they shall be furnished within five days; that such teacher shall be entitled to a hearing upon written request filed within fifteen days after the receipt of notice of the consideration of cancellation, the hearing to be held not less than five days after the request is filed, and the teacher shall be given not less than five days' notice of the time and place of hearing; that the teacher shall have a right to a full statement of the reasons for the proposed cancellation, and shall have a right to be heard, and to present the testimony of witnesses and other evidence at the hearing. Contracts may be canceled for incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions, or other good and just cause, but not for political or personal reasons. "That when the cause of cancelation of an indefinite contract is not immorality or insubordination, as defined in this act, such cancelation shall go into effect at the end of the school term following such cancelation. The school board of any such school corporation, by a majority vote, evidenced by a signed statement in the minutes of the board, may cancel an indefinite contract with a teacher after compliance with the provisions of this section; Provided, That the decision of the school board shall be final."

It is agreed that a resolution was passed and the teacher given notice as required.

The teacher made no request for a statement of the reasons for consideration of the cancellation of his contract, but, when a request for a hearing was made twenty-seven days after the original notice, a written statement of the reasons was given to him.

It is conceded that there was no written request for a hearing within fifteen days, and no hearing was had.

At the time of the original resolution the causes to be considered as a basis for canceling the contract were set out at length in the resolution and spread of record as follows:

1. Incompetency of said Axe.
2. Insubordination of said Axe.
3. Neglect of duty of said Axe.

This is followed by nine numbered specifications, which need not be set out in full, but which specify that Axe had refused to carry out directions of the board; that he had acted in certain business matters without the knowledge or approval of the board; that he had failed in his duty in respect to care of the school property; that he collected funds from the sale of books and athletic events and other school activities and failed to make an accounting; that he had failed to collect, or enforce the collection of, certain fees for the transfer of pupils from other districts, and failed to report the attendance of pupils from other districts and the non-payment of transfer fees; that he had failed to visit and inspect the school property and to visit classes; that he had failed to cooperate with the teachers, and to support the principals and teachers in the maintenance of discipline.

The record shows that after complying with all of the statutory conditions, the board, "by a majority vote,

evidenced by a signed statement in the minutes," canceled the indefinite contract. The record and resolution show that the action was pursuant to the original resolution of April 2, 1941; that the meeting was held and the order entered on the 2nd day of May, 1941, the date fixed in the original resolution. It recites that Axe was present and had actual notice of the original resolution, and that he was given written notice of the exact date and time when and place where a consideration would take place; that he had not requested a hearing within fifteen days after receipt of the written notice; and the resolution and entry recite: ". . . this Board, after due consideration, hereby finds that sufficient cause exists for the cancellation of said contract on each of the grounds of specifications, separately and severally, set forth in the resolution by this Board adopted on the 2nd day of April, 1941"; and it is further ordered that the contract of Axe "be and the same is hereby cancelled" as of the 5th day of May, 1941.

It is said by the appellants that the date for entering new contracts for permanent teachers was the 5th of May, and that the appellee's request for a hearing came only three days before this date, and that if they had granted him a hearing to take place five days after the demand it would have prevented action on the resolution before the beginning of the next contract year, and that the cancellation of his contract could not have been made effective until May, 1942, but it would seem that this is of no importance.

After the order canceling his contract the appellee Axe began this action to enjoin the school board from interfering with his performance of his duties as superintendent of schools, and for a mandate ordering the

board to expunge the record of its order canceling his contract.

The court below seems to have adopted plaintiff's theory that, although there was no hearing, or request for a hearing, before the school board, the court may hear evidence and determine whether the cancellation of the contract was justified and whether the board was influenced by illegal or improper motives. There is no contention that the school board did not proceed according to the statute.

If the plaintiff's theory can be sustained, it seems that a teacher need never ask for a hearing before the school board. It is clear that when, under such circumstances, a teacher brings an action to enjoin, the teacher will not bring forward evidence which would sustain the board's action, and therefore if such an action will lie, the decision of the board is not final, but in order to sustain it the school board must be prepared to bring into court substantial evidence to sustain its action. Such a construction of the statute cannot be sustained by reason or authority. In *Arburn* v. *Hunt et al.* (1934), 207 Ind. 61, 64, 191 N. E. 148, 149, it is said: "Appellant, by entering into the contract, must be deemed to have agreed that it might be cancelled, as provided in § 2 of the Act, and in the light of his contract he cannot be heard to say that he is entitled to a hearing before any other body or persons than that expressly provided for in the statute. The legislature might have provided for a cancellation of the contract without notice or hearing. The fact that it saw fit to put restrictions upon its otherwise plenary powers to cancel the contract, does not invest appellant or the courts with authority to impose further restrictions or limitations." And in *School City of Lafayette* v. *Highley* (1938), 213 Ind. 369, 378, 12 N. E. (2d)

927, 930, it is said: "It was appellee's duty to appear (before the school board) to that cause and make his defense if he had any. . . . Not having appeared in any manner, and not having asserted any defense, he must be concluded by that procedure."

In the nature of things, the school board would have knowledge of the facts concerning charges of the character made against appellee. They were specific and indicated that his contract was canceled, not for political or personal reasons, but for legal, statutory reasons. His failure to ask for a hearing within the statutory time, after notice, must be treated as a consent that the board might decide, without a hearing, whether there was sufficient legal ground for canceling his contract, and upon such information as the board officially, or the members personally, might have upon the subject.

When it appeared that the school board had complied with the statute, the trial court should have gone no further.

Upon the trial, the only evidence submitted consisted of affidavits. These affidavits furnished substantial evidence sustaining the action of the board, so that if there had been a hearing before the board, and an action to enjoin upon the ground that there was no substantial evidence to sustain the board, the decision must have been against the appellee Axe. *School City of Peru et al.* v. *State ex rel. Youngblood* (1937), 212 Ind. 255, 7 N. E. (2d) 176, 1002, 9 N. E. (2d) 80.

The proceedings of the board conform to the requirements of the statute, and its decision is made final by the statute.

Judgment reversed, with instructions to dissolve the temporary injunction and enter judgment for the defendant board.

Shake, C. J., not participating.

NOTE.—Reported in 38 N. E. (2d) 341.