**NORTH MIAMI EDUCATION ASSOCIATION and Nelda Sue Johnson, Appellants–Plaintiffs,**

v.

**NORTH MIAMI COMMUNITY SCHOOLS, Appellee–Defendant.**

**No. 52A02–9911–CV–754**

Court of Appeals of Indiana.

Sept. 18, 2000.

Richard J. Darko, Eric M. Hylton, Lowe Gray Steele & Darko, LLP, Indianapolis, Indiana, Attorneys for Appellants.

Donald G. Fern, Fern, Grund & Grund, Peru, Indiana, Attorney for Appellee.

**OPINION**

RILEY, Judge

### STATEMENT OF THE CASE

Appellants–Plaintiffs Nelda Sue Johnson (Johnson) and the North Miami Education Association (Association) (hereinafter referred to collectively as "Plaintiffs") appeal the trial court's Order granting the North Miami Community Schools' (School) motion to dismiss Plaintiffs' complaint and application to vacate an arbitrator's award because the arbitrator did not direct the School to reinstate Johnson as a teacher. The trial court found that the arbitrator did not exceed his power in making his award, and that Plaintiffs failed to allege any other statutory or factual basis that would allow the trial court to accept judicial review in order to vacate the Arbitration Award.

We affirm.

### ISSUE

Plaintiffs raise one issue for our review, which we restate as: whether the trial court erred in granting the School's motion to dismiss the Plaintiffs' complaint and application to vacate the arbitrator's award because the Plaintiffs failed to allege either a statutory or factual basis to allow the trial court to exercise judicial review to vacate the Arbitration Award.

### FACTS AND PROCEDURAL HISTORY

Johnson was hired by the North Miami Community Schools at the beginning of the 1996–1997 school year as a nonpermanent teacher at the North Miami Junior–Senior High School. The North Miami Education Association is the exclusive representative for the employees of the North Miami Community Schools. The Association and the School negotiated a Collective Bargaining Agreement that covered August 1997 through August 1999.

Johnson's teaching contract was renewed for the 1997–1998 school year. However, during its regularly scheduled meeting of April 21, 1998, the School voted not to renew Johnson's contract as a nonpermanent teacher for the 1998–1999 school year. The Association and Johnson stipulated that pursuant to Ind.Code § 20–6.1–4–14, the procedural due process safeguards were followed when the School voted to not renew Johnson's teaching contract. After Johnson requested the reasons for the nonrenewal of her teaching contract, the School issued a letter dated April 22, 1998, informing Johnson that pursuant to Ind.Code § 20–6.1–4–14, it was not renewing her teaching contract for the following reasons:

1. Your instructional contribution to the educational program was not of the quality sufficiently high to merit your continuation as a teacher. The Board of School Trustees considers insufficient quality of instructional contribution to be relevant to the North Miami Community School Corporation's interest.

2. The mathematics program could be improved by replacing you with another teacher. The Board of Trustees considers improvement of the mathematics program to be relevant to the North Miami Community School Corporations' interest.

(R. 77).

As a result of the School's decision to not renew Johnson's teaching contract, and pursuant to the terms of the Collective Bargaining Agreement, on May 22, 1998, the Association filed a grievance on Johnson's behalf. The grievance asserted that the School had failed to abide by numerous provisions of the Agreement when it refused to renew Johnson's contract for the 1998–1999 school year. As a remedy, the grievance asked that Johnson's teaching contract be renewed, that references to her nonrenewal be expunged from her personnel file, and that all other relief due her be granted.

After the grievance progressed through the contractual procedure of the Collective Bargaining Agreement without resolution, the Association requested binding arbitration of the grievance.

On August 4, 1998, an arbitration hearing was held before Stephen L. Hayford (Arbitrator). On October 26, 1998, the Arbitrator issued his Opinion and Award and found that the School had violated four provisions of the Collective Bargaining Agreement, but determined that he had no authority to grant a remedy reinstating Johnson's teaching contract.

On January 14, 1999, the Plaintiffs filed with the trial court their complaint and application for vacation of the Arbitrator's Award. The Association based jurisdiction of its Complaint and Application to Vacate Award of Arbitrator on Ind.Code § 34–57–2–13. The Association alleged that the Arbitrator's Award was legally void and defective in that the Opinion and Award were in manifest disregard of the law, and that there were gross errors of judgment in law apparent on the face of the Award

because the Arbitrator ignored the applicable law regarding binding arbitration of teacher dismissals.

On March 5, 1999, the School filed a Motion to Dismiss the Association's complaint for failure to state a claim for which relief could be granted, and for lack of subject matter jurisdiction. The matter was submitted to the trial court for argument and hearing on May 13, 1999. On October 19, 1999, the trial court issued its Order granting the School's Motion to Dismiss because the Plaintiffs had failed to allege a factual basis or statutory authority that would allow the trial court to accept judicial review. Additional facts will be supplied when necessary.

### DISCUSSION AND DECISION

Plaintiffs argue that the trial court erred in dismissing their complaint and application to vacate the arbitrator's award because they failed to allege either a statutory or factual basis to allow the trial court to accept judicial review to vacate the Arbitration Award. Specifically, Plaintiffs contend that because Indiana law allows school corporations and exclusive representatives to agree that teacher dismissals are subject to binding arbitration and the law provides arbitrators the power to reinstate teachers, the trial court erred in determining that the arbitrator had no power to reinstate Johnson despite the School's violations of the Agreement. We disagree.

Although the Arbitrator found that the School violated the Master Contract, and that these violations may have prejudiced Johnson's efforts to secure renewal of her teaching contract, he also held that he was without authority to overturn the School's decision not to renew her contract. Specifically, the Arbitrator's Award was as follows:

In the analysis above, the Arbitrator has determined that the actions of the Administration and the Board in the course of deciding not to renew the teaching contract of Nelda Sue Johnson, resulted

in violations of Article X, Section D and Article XII, Sections A, B and E of the Master Contract. Accordingly, the instant Grievance is sustained.

In most circumstances Master Contract violations like those found in this Case would warrant the reinstatement of [a] teacher terminated for alleged poor teaching performance. However, as explained previously, because the decision not to renew the teaching contract of a nonpermanent teacher is a matter reserved by statute (I.C.20.6–4–14)[sic] [Ind.Code § 20–6.1–4–14] to the sole discretion of the Board, the Arbitrator is without the authority to direct that Mrs. Johnson's nonrenewal be overturned. Instead the remedy in this Cause must be limited to the following. The Administration and the Board are directed, in the future, to comply fully with the provisions of Article X, Section D, and Article XII, Sections A, B and E of the Master Contract with regard to all bargaining unit teachers, nonpermanent, semi-permanent and permanent. No other remedy is directed.

(R. 95).

Plaintiffs argue that the Arbitrator's decision and award was in manifest disregard of Indiana statutory law, and contains gross errors of judgment in law that are apparent on the face of the Award. Specifically, Plaintiffs rely on Ind.Code § 34–57–2–13 of the Uniform Arbitration Act to argue that the Arbitrator's award should be vacated. In relevant portion, that statute provides:

  (a) Upon application of a party, the court shall vacate an award where:

  * * * * *

  (3) the arbitrators exceeded their powers. and the award can not be corrected without affecting the merits of the decision upon the controversy submitted;

  * * * * *

but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

Ind.Code § 34–57–2–13. While Plaintiffs concede that generally an arbitrator's mistake of law or erroneous interpretation of the law do not constitute an act in excess of the arbitrator's powers, they argue that manifest disregard of the law and gross errors of judgment in law are two exceptions to the general rule that an arbitration award will not be vacated as a result of a mistake of law. *See Southwest Parke Educ. Ass'n v. Southwest Parke Community School Trustees Corp., Bd. of School Trustees,* 427 N.E.2d 1140, 1147 (Ind.Ct. App.1981), *reh'g denied.*

Plaintiffs begin with an analysis of three statutory amendments to the laws relating to arbitration of teacher dismissals to argue that the arbitrator understood and correctly stated the law, but disregarded the law in making his decision. Collective bargaining agreements between school corporations and teachers are governed by Ind.Code § 20–7.5–1 *et seq.,*[1] and permit a school corporation and a teacher's association to bargain and include in a collective bargaining agreement provisions for the arbitration of teacher dismissals.

First, Plaintiffs argue that the amended language of Ind.Code § 20–6.1–4–14.5 of the Teacher Tenure Act permits school employers and an exclusive representative to mutually agree to binding arbitration with respect to teacher dismissals. Ind. Code § 20–6.1–4–14.5 governs the construction of teacher employment contracts with collective bargaining agreements, and provides in relevant part as follows:

  (a) The provisions of this chapter may not be construed to limit the provisions of a collective bargaining agreement negotiated under IC 20–7.5.

---

1. Ind.Code § 20–7.5–1 *et seq.* is the Certificated Educational Employee Bargaining Act ("CEEBA") chapter of the Collective Bargaining Law for Education. The Collective Bargaining Agreement between the Association and the School is governed by CEEBA.

(b) Notwithstanding this chapter, this chapter does not prohibit a school employer and an exclusive representative from collectively bargaining contracts that alter the requirements of [the Teacher Tenure Act].

(c) Notwithstanding this chapter, this chapter may not be construed to limit the rights of a school employer and an exclusive representative ... to mutually agree to binding arbitration with regard to teacher dismissals.

■ The Teacher Tenure Act (TTA) is the legislation that provides recourse in the dismissal of teachers in Indiana. Ind. Code § 20–6.1–4–1 *et seq.* The policy of TTA "is to establish a uniform tenure system for all the schools of the state and must be construed liberally with that aim and end in view." *Michigan City Educ. Ass'n v. Board of School Trustees of Michigan City Area Schools,* 577 N.E.2d 1004, 1008 (Ind.Ct.App.1991), *trans. denied* (quoting *School City of Lafayette v. Highley,* 213 Ind. 369, 376, 12 N.E.2d 927, 930 (1938)). The manifestation of the legislative intent underlying the TTA is present in the CEEBA by excluding the subjects of employment and discharge of teachers from collective bargaining, and providing that the school governing bodies shall have responsibility and authority to hire and retain and to suspend and discharge teachers in accordance with applicable law. *Michigan City Educ. Ass'n,* 577 N.E.2d at 1008. Furthermore, as we read the amended language of Ind.Code § 20–6.1–4–14.5, this statute is to be read not to limit the provisions of a collective bargaining agreement negotiated under IC § 20–7.5, and merely *allows* school employers and exclusive representatives, such as the Association in our case, to mutually agree to binding arbitration with regard to teacher dismissals. The statute does not contain any language with respect to an arbitrators' authority to renew a nonpermanent teacher's contract.

Next, Plaintiffs argue that the amendment to Ind.Code § 20–7.5–1–5 of the CEEBA requires school employers and their exclusive bargaining representatives to "discuss" certain subjects, and permits them to "bargain collectively" with respect to the retention of certificated employees. Ind.Code § 20–7.5–1–5 provides in relevant part:

(a) A school employer shall discuss with the exclusive representative of certificated employees, and may but shall not be required to bargain collectively, negotiate, or enter into a written contract concerning or be subject to or enter into impasse procedures on the following matters:

* * * * *

(5) Hiring, promotion, demotion, transfer, assignment, and retention of certificated employees, and changes to any of the requirements set forth in IC 20–6.1–4 [the Teacher Tenure Act].

* * * * *

(c) This chapter may not be construed to limit the rights of the school employer and the exclusive representative to mutually agree to the matters authorized under IC 20–6.1–4–14.5.

■ However, our reading of this statute does not place a requirement on a school employer to collectively bargain with respect to the retention of a certificated employee. The statute merely requires that the school employer *shall discuss and may but shall not be required* to collectively bargain the retention of a certificated employee.

Finally, Plaintiffs argue that the amendment to Ind.Code § 20–7.5–1–6 gives school employers the right to retain employees through collective bargaining procedures established in Ind.Code §§ 20–7.5–1–4 and 5. In relevant part, Ind.Code § 20–7.5–1–6 states:

(b) School employers shall have the responsibility and authority to manage and direct in behalf of the public the operations and activities of the school corporation to the full extent authorized by law. Such responsibility and activity shall in-

clude but not be limited to the right of the school employer to:

* * * * *

(3) hire, promote, demote, transfer, assign, and retain employees through procedures established in sections 4 and 5[2] of this chapter

■ This portion of the CEEBA dealing with the rights of school employers and school employees covers the rights of school employees to collectively bargain certain grievance issues with school employers. However, this section does not grant authority to an arbitrator to overturn the decision of a school employer to not renew a nonpermanent teacher's contract. Nevertheless, Plaintiffs argue that the three amendments noted above clearly expressed an intent to permit collective bargaining of procedures that would alter the Teacher Tenure Act requirements related to the dismissal of teachers. Plaintiffs contend that while school employers are not required to collectively bargain for final and binding arbitration of teacher dismissals, Indiana law clearly allows them to do so, and therefore, the Arbitrator manifestly disregarded the law by finding that he did not have the authority to renew Johnson's contract. Furthermore, Plaintiffs claim that the School collectively bargained with the Association for a provision in their agreement to permit teacher dismissal disputes to be subject to grievance and arbitration procedures, and also permitted an arbitrator to reinstate a teacher who was terminated in violation of the Agreement. Although we agree that the three amendments previously discussed permit school employers and employees to collectively bargain for final and binding arbitration of teacher dismissals, these statutes do not give an arbitrator the au-

thority to reinstate a nonpermanent teacher's contract. Moreover, our review of the Record does not yield any evidence that the Collective Bargaining Agreement between the School and the Association gave an arbitrator the authority to renew a nonpermanent teacher's contract.

In response to Plaintiffs' claims that the Arbitrator's award should be vacated for his manifest disregard of the law, the School filed a Motion to Dismiss on March 5, 1999, for the following reasons: (1) That the Complaint fails to state a claim for relief, (2) that the Complaint herein fails to grant the Court subject matter jurisdiction, and (3) that the Complaint fails to allege the statutory authority or grounds specified by statute for the Court to accept judicial review. (R. 106). On May 13, 1999, a hearing was held and arguments were heard on the School's Motion to Dismiss. On October 19, 1999, the trial court entered the following order:

The Court has read the briefs submitted by the parties in reference to the Defendant's, North Miami Community Schools', Motion to Dismiss. In addition, the Court heard oral arguments regarding the Motion to Dismiss on May 13, 1999. In response to the Defendant's motion the Plaintiffs argue that his Court has jurisdiction pursuant to I.C. 34–57–2–13. This section, part of the Uniform Arbitration Act, allows a party to ask a court to set aside an arbitration award if certain situations take place. In the case at bar, the Plaintiffs are asking this Court to set aside an arbitration finding because the arbitrator did not direct that the employee be reinstated by the Defendant. The Plaintiffs contend that the failure to do so falls under I.C. 34–57–2–13(a)(3) in

2. We have previously cited and discussed the collective bargaining implications of Ind.Code § 20–7.5–1–5. Ind.Code § 20–7.5–1–4 provides:

Subjects of Bargaining. A school employer shall bargain collectively with the exclusive representative on the following: salary, wages, hours, and salary and wage related

fringe benefits. A contract may also contain a grievance procedure culminating in final and binding arbitration of unresolved grievances, but such binding arbitration shall have no power to amend, add to, subtract from or supplement provisions of the contract.

that the arbitrator exceeded his power and the award can not be corrected without effecting [sic] the merits of the decision upon the controversy submitted. Plaintiffs further argue that the arbitrator had the power to order the reinstatement of Nelda Sue Johnson pursuant to amendments to the Tenure Act.

After review of the applicable law, this Court cannot find that the amendments to the Tenure Act nor the collective bargaining agreement in this case allow for the reinstatement of Nelda Sue Johnson as a remedy available to the arbitrator in this case. Specifically, this Court finds that the arbitrator did not exceed his power in making his award. Therefore, I.C. 34–57–2–12–(a)(3) [sic] does not apply to this case. The Plaintiffs have failed to allege any other statutory or factual basis that would allow them to petition this Court to vacate the Arbitration Award of Stephen L. Hayford on October 26, 1998. As a result the Plaintiffs have failed to allege statutory authority or grounds specified by Statute which would allow this Court to accept judicial review. The Court now grants Defendant's Motion to Dismiss. (R. 343–344).

Plaintiffs now appeal the trial court's order granting the School's Motion to Dismiss. The motion addressed a lack of subject matter jurisdiction under Ind.Trial Rule 12(B)(1). The motion also addressed a failure to state a claim upon which relief could be granted and, in essence, a lack of jurisdiction over the case, under Ind.Trial Rule 12(B)(6). *See Browning v. Walters*, 620 N.E.2d 28, 31 (Ind.Ct.App.1993). Both parties agree that the applicable standard to review the School's motion is T.R. 12(B)(6) and that a claim cannot be dismissed unless it appears to a certainty that the complainant is not entitled to relief. When reviewing the dismissal of a complaint for failure to state a claim under T.R. 12(B)(6), this court views the pleadings in a light most favor-able to the plaintiff and draws every reasonable inference in favor of the plaintiff. *Ratliff v. Cohn*, 693 N.E.2d 530, 534 (Ind. 1998), *reh'g denied*. Dismissal under T.R. 12(B)(6) will be affirmed on appeal when a complaint states a set of facts and circumstances which, even if true, would not support the relief requested. *Minks v. Pina*, 709 N.E.2d 379, 381 (Ind.Ct.App.1999), *reh'g denied, trans denied*. The trial court's dismissal of an action will be affirmed if the judgment is sustainable on any theory or basis found in the record. *Id.*

Indiana's Uniform Arbitration Act provides a mechanism for enforcing agreements to arbitrate and for securing judicial review and enforcement of arbitration awards. *School City of East Chicago, Ind. v. East Chicago Federation of Teachers, Local No. 511, A.F.T.*, 622 N.E.2d 166, 168 (Ind.1993); see Ind.Code §§ 34–4–2–1 to 34–4–2–22; see also Ind. Alternative Dispute Resolution Rules 1, 3, 7 (adopted to bring some uniformity into alternative dispute resolution). The purpose of arbitration is to afford parties the opportunity to reach a final disposition of differences in an easier, more expeditious manner than by litigation. *Indianapolis Public Transp. Corp. v. Amalgamated Transit Union, Local 1070*, 414 N.E.2d 966, 969 (Ind.Ct.App. 1981). To facilitate this purpose, judicial review of arbitration awards is very narrow in scope. *School City of East Chicago, Ind.*, 622 N.E.2d at 168. We set aside an award only when one of the grounds specified by the Uniform Arbitration Act for vacation of an award is demonstrated. *Id.* A party who seeks to vacate an arbitration award under the Act bears the burden of proving the grounds to set the award aside. *Id.*

As we discussed above, the Uniform Arbitration Act provides that an arbitration award may be challenged on the ground that "the arbitrators exceeded their powers and the award can not be corrected without affecting the merits of the decision upon the controversy submit-

ted." Ind.Code § 34–4–2–13(a)(3). This provision is to be narrowly construed. *See International Broth. of Elec. Workers, Local 1400 v. Citizens Gas & Coke Utility,* 428 N.E.2d 1320, 1325 (Ind.Ct.App.1981). The statutory provision does not attempt to limit the discretion and powers of a neutral arbitrator to whom a controversy has been duly submitted. *Id.*

■■■ The Uniform Arbitration Act does not declare which issues are subject to arbitration. *Angell Enterprises, Inc. v. Abram & Hawkins Excavating Co., Inc.,* 643 N.E.2d 362, 364 (Ind.Ct.App.1994). Rather, arbitration arises through contract, and the parties are essentially free to define for themselves what questions may be arbitrated, remedies the arbitrator may afford, and the extent to which a decision must conform to the general principles of law. *School City of East Chicago, Ind. v. East Chicago Federation of Teachers, Local No. 511, A.F.T.,* 422 N.E.2d 656, 662 (Ind.Ct.App.1981). Thus, an arbitrator is limited by the bounds of the agreement from which he draws his authority and an arbitrator is expected to be aware of those limits. *International Broth. of Elec. Workers,* 428 N.E.2d at 1326.

Here, Plaintiffs do not dispute that in deciding not to renew Johnson's teaching contract, the School followed the required statutory procedures of Ind.Code § 20–6.1–4–14, pertaining to the termination of the teaching contracts of nonpermanent teachers. Further, Plaintiffs make no argument with respect to the provisions of the Collective Bargaining Agreement. However, the Plaintiffs contend that in not renewing Johnson's teaching contract, the School failed to follow several provisions of the Collective Bargaining Agreement that provides certain safeguards to teachers. In addition, Plaintiffs assert that pursuant to the provisions of the Collective Bargaining agreement and the statutory rules of the Teacher Tenure Act, the Arbitrator had the authority to renew Johnson's teaching contract.

■■■ However, nonpermanent teachers are not accorded the same status as permanent teachers and, thus, procedures for the termination of nonpermanent teachers are different from those for tenured teachers. *Lewis v. Board of School Trustees of Charles A. Beard Memorial School Corp.,* 657 N.E.2d 180, 182 (Ind.Ct. App.1995), *reh'g denied, trans. denied,* (citing *Aplin v. Porter School Tp. of Porter County,* 413 N.E.2d 999, 1003 (Ind.Ct.App. 1980)). Ind.Code § 20–6.1–4–14 states in relevant part as follows:

(i) The governing body of a school corporation may decide not to continue a teacher's contract under this section:

(1) for any reason considered relevant to the school corporation's interest; or

(2) because of a teacher's inability to perform the teacher's teaching duties.

Nonpermanent teachers are not accorded the same status, for purposes of right to employment in contract renewal, as are permanent teachers, but, rather, nonpermanent teachers have no contractual right to continued employment. *Aplin,* 413 N.E.2d at 1003. In *Vukovits,* this Court noted the public policy established in Ind. Code § 20–6.1–4–14 that places the decision regarding the retention of nonpermanent teachers within the "unfettered discretion of the School Board." *Vukovits v. Board of School Trustees of Rockville Community School Corp.,* 659 N.E.2d 174, 181 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* Nonpermanent teacher's contract rights exist only with regard to a contract entered into for the present school year, and the decision to continue a nonpermanent teacher's contract is merely a decision to reemploy that teacher for another year. *Aplin,* 413 N.E.2d at 1003.

■■■ In the present case, the Arbitrator found that in light of the clear language of Ind.Code § 20–6.1–4–14(i), and because the nonrenewal of Johnson's contract was not an act of discipline, he was without authority to evaluate the propriety of the School's decision to terminate Johnson's employment. Plaintiffs do not dis-

758

pute that the Teacher Tenure Act effectively precludes them from contesting the merits of the School's decision not to renew Johnson's teaching contract. Instead, Plaintiffs argue that the course of conduct engaged in by the School that eventually led to the decision not to renew Johnson's contract resulted in multiple violations of the Collective Bargaining Agreement. According to the Plaintiffs, those contractual violations were so egregious and prejudicial to Johnson's due process rights as to warrant an arbitral order reversing the nonrenewal of Johnson's teaching contract and directing that she be reinstated to her former teaching position. However, although the Arbitrator determined that the Plaintiffs proved that the actions of the School, which led to the decision to not renew Johnson's teaching contract, resulted in four violations of the Collective Bargaining Agreement, and that those violations would usually warrant the reversal of the School's nonrenewal decision, the Arbitrator was statutorily barred from reversing the School's action.

Therefore, because the School properly followed the statutory procedures for not renewing Johnson's contract as a nonpermanent teacher and because the relevant Indiana case law pertaining to Ind.Code § 20-6.1-4-14 states that the School has the unfettered discretion to not continue a nonpermanent teacher's contract for any reason considered relevant to the School's interest, the Arbitrator's decision was proper.

Affirmed.

BAKER, J., and KIRSCH, J., concur.